UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
OMAR VILLALBA and JOANNE VILLALBA,    :
                                      :
        Plaintiffs,                  :
                                      :       DECISION AND ORDER
   -against-                         :       11-CV-1030 (WFK) (RML)
                                      :
ROBO-BREAKING CO., INC., NATIONAL     :
RAILROAD PASSENGER CORPORATION        :
d/b/a/ AMTRAK, AECOM USA, INC., f/k/a :
DMJM+HARRIS.,                         :
                                      :
        Defendants.                  :
                                      :
------------------------------------------------------------X
AECOM USA, INC.,                      :
                                      :
        Defendant/Third-Party         :
        Plaintiff,                    :
                                      :
   -against-                         :
                                      :
SKANSKA USA CIVIL NORTHEAST INC., f/k/a :
SLATTERY SKANSKA, INC.,               :
                                      :
        Defendants.                  :
                                      :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**

This action arises out of the injuries that Plaintiff Omar Villalba allegedly sustained when he partially fell through a hole in an elevated platform. Plaintiff, Defendant National Railroad Passenger Corp., d/b/a/ Amtrak ("Amtrak"), and Defendant AECOM USA, INC. ("AECOM") each brings a motion for summary judgment. For the reasons stated below, the Court grants Defendants' motions as to New York State Labor Law § 240 and § 241, but denies them as to § 200. Plaintiff's motion for summary judgment is denied in its entirety.

# FACTUAL AND PROCEDURAL BACKGROUND

## I. Procedural History

This action was removed from the Supreme Court of New York, Queens County, on March 3, 2011. Dkt. 1 at 1–2 (citing 28 U.S.C. §§ 1331, 1349). Plaintiffs subsequently filed an Amended Complaint against Robo-Breaking Co., Inc., Amtrak, and AECOM on April 19, 2011. Dkt. 7 ("Am. Compl.").[1] Plaintiff Omar Villalba brought a negligence claim against all Defendants; a negligence / failure to warn claim against all Defendants; and a failure to provide proper safety equipment claim against all Defendants. Dkt. 7 at 7–17. Plaintiff Joanne Villalba brought a loss of consortium claim against Defendants. *Id.* at 17–18. On May 11 and 12, 2011, Defendants AECOM and Amtrak filed answers and cross-claims, and on May 26, 2011, AECOM filed a third-party complaint against Skanska USA Civil Northeast Inc. ("Skanska"). Dkts. 9–12, 14.

On August 16, 2013, Defendant Amtrak, Defendant AECOM, and Plaintiff Omar Villalba[2] filed Motions for Summary Judgment. Dkts. 45 "(AECOM's Mot."); 47 ("AECOM Memo."); 53 ("Amtrak's Mot."); 58 ("Amtrak Memo."); 60 ("Pl.'s Mot."); 60-2 ("Pl.'s Memo."). AECOM moved for summary judgment on Plaintiff's New York State Labor Law §§ 240, 241 claims and Labor Law § 200[3] claims, to which Plaintiff filed an opposition and Amtrak filed a partial opposition. Dkt. 47, 50, 51. Amtrak moved for summary judgment on Plaintiff's New York State Labor Law §§ 240, 241 claims; Labor Law § 200; and Article 1926 of OSHA,[4]

---

[1] On February 24, 2012, Robo-Breaking Co., Inc. was dismissed from the action. Dkt. 26.

[2] The Motion is purportedly brought on behalf of both Plaintiffs, but it only moves on claims brought by Omar Villalba.

[3] This statute codifies Plaintiff's common law negligence claim.

[4] Amtrak references the OSHA claim in its Motion, but then fails to argue it in the brief. *See* Amtrak Mot. at 1. Accordingly, any OSHA claim will not be addressed in this Order.

to which Plaintiff filed an opposition. Dkts. 53–55. Plaintiff moved for partial summary judgment on his Labor Law §§ 240, 241 claims, to which Defendants AECOM and Amtrak filed oppositions. Dkts. 60, 66, 70.

II. **Factual Background**

The parties do not dispute the following factual events, except where noted.

In 2004, Amtrak entered into a construction contract with Skanska to upgrade two "railroad tunnel emergency ventilation facilities" in Manhattan. Dkt. 59 (Amtrak's R. 56.1 St. ("Amtrak St.")), at ¶ 12. Skanska acted as general contractor, provided personal protective equipment to its employees, and was responsible for fixing or cordoning off any holes that were reported on the platforms. *Id.* at ¶¶ 12–15; AECOM Memo. at 3-4 ("As General Contractor, SKANSKA controlled the means and methods of construction on the Project, including what tasks the workers would perform."); AECOM Memo. at 5 (SKANSKA provided hard hats, safety glasses, reflective vests, ear plugs, and gloves to its workers). Further, SKANSKA was "solely responsible" for providing a safe place for the performance of the work and "solely responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work." AECOM Memo. at 4 (citing Dkt. 46-14, Ex. N (Construction Contract)). SKANSKA's Project Superintendent coordinated the work of the different foreman and met with the foremen to give them directions. AECOM Memo. at 4. The Superintendent also was responsible for ensuring that workers were supplied with the required personal protective equipment. *Id.* at 5 (citing Dkt. 56, Ex. J at 70; Ex. L at 12-14). SKANSKA's Site Safety Manager was responsible for conducting safety inspections and safety meetings, attending review meetings with project engineers and management, maintaining the industrial hygiene equipment, and reprimanding employees if they were conducting work in an unsafe manner.

AECOM Memo. at 5 (citing Dkt. 46-12, Ex. L at 12-14). Plaintiff Omar Villalba was an employee of SKANSKA during all relevant times. Am. Compl. ¶ 31.

AECOM acted as a safety monitor for Amtrak. Amtrak St. ¶ 16; AECOM Memo. at 5 (AECOM was "Construction Manager"). In this role, AECOM monitored construction activities and assigned a Safety Engineer who had "full authority to act on behalf of the CM [Construction Manager] at all times to periodically monitor that all construction work [was] being performed in accordance with standard industry practice and with Amtrak, State and Federal Laws regulating job site safety." Amtrak St. at ¶ 16 (citing Dkt. 56-12, Ex. L (services contract between Amtrak and AECOM)). AECOM's safety responsibilities were limited to monitoring the construction activities and making recommendations, and AECOM employees "did not have the authority to enforce the work safety plans, stop construction, or correct any perceived safety issues if [they] observed workers or conditions that were not in compliance with the safety requirements." AECOM Memo. at 6. AECOM employees did not have authority to speak directly to SKANSKA employees or make recommendations as to the equipment they used, but they would stop construction in the event that they perceived a safety issue that presented an imminent danger. *Id.* at 7.

Plaintiff was employed by SKANSKA as a drill running foreman. Amtrak St. ¶ 19; *see also* Dkt. 48 (AECOM's R. 56.1 St. ("AECOM St.")), ¶ 8. On March 24, 2010, Plaintiff attended Amtrak's daily job briefing and then met with his crew to instruct them on the day's work assignments. AECOM Memo. at 8. That day, the drill runners were drilling holes into the rock and using "splitters and a Brokk machine to break the rock and concrete." AECOM Memo.

at 8. This work was performed on a scaffold that was 40 feet[5] above the train tracks below, but four to fifteen feet above a platform below. Amtrak St. at ¶¶ 23–24; Dkt. 60-1 (Pl.'s R. 56.1 St. ("Pl.'s St.")), at ¶ 7; Pl.'s Memo. at 2. Plaintiff was not wearing a harness because "the platform was all one level with no drop-off point." AECOM Memo. at 8.

In the morning of that day, Plaintiff witnessed a coworker attempting to manipulate a machine on the scaffold and then called a carpenter to repair a 14" to 16" hole created by the machine. Amtrak St. at ¶¶ 25–26.[6] Approximately 45 minutes later, Plaintiff was helping another coworker with a one hundred pound hydraulic jack when he stepped backward and partially fell into the 14" to 16" hole. *Id.* at ¶¶ 27–29. Plaintiff's right leg went into the hole up to the groin. *Id.* at ¶ 29.

Plaintiff allegedly suffered knee injuries resulting from the fall after his left knee buckled sideways. Pl.'s Memo. at 3; Dkt. 46-15, Ex. O (Incident Report). However, Plaintiff continued to assist the drill runner after the alleged incident and did not complete a Safety Officer's report because he did not believe his injury was serious. Dkt. 46-7, Ex. G at 88. Plaintiff worked for the remainder of the day and for the next three to four months in the same position. Dkt. 46-10, Ex. J at 61-63.

## DISCUSSION

### I. Standard of Review

A court appropriately grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[5] In the Amended Complaint, Plaintiff states that the platform was 60 feet below sidewalk level and approximately 25 feet above the railroad tracks. Am. Compl. ¶ 34.

[6] Plaintiff contests that the machine created this hole. He argues that he did not see the Brokk machine create the hole, and that it may have just been stuck in a preexisting hole. Dkt. 74 ("Ex. A") at ¶ 6–8.

law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The moving party must meet its burden by pointing to evidence in the record, including depositions, documents, affidavits, or other materials which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). The role of the court is not to weigh the evidence and determine the truth of the matter, but rather to perform "the threshold inquiry of determining whether there is the need for a trial[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

If the moving party fulfills its preliminary burden, the burden shifts to the non-movant to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1). The non-moving party must make a showing sufficient to establish the existence of facts or factual disputes supporting each element constituting its case. *See Celotex*, 477 U.S. at 322–23 ("[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."). Statements that are devoid of specifics and evidence that is "merely colorable" are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("The non-

moving party may not rely on conclusory allegations or unsubstantiated speculation."). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citing *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

II. Application

A. New York State Labor Law § 240 (the "Scaffold Law")

All parties move for summary judgment on Plaintiff's claim under New York Labor Law § 240. That statute reads, in relevant part:

> All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

§ 240(1).

Section 240 is "aimed at protecting workers from the dangers of elevation-related risks" and imposes absolute liability for worker injuries on offending contractors, owners, and agents. *See Rodriguez v. Biltoria Realty, LLC*, 250 F. Supp. 2d 122, 126 (E.D.N.Y. 2003) (Wexler, J.); *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 224 n.2 (2d Cir. 2006) ("Contractors and owners are absolutely liable for injuries caused by their violations of New York Labor Law § 240(1)."). Liability is "strict," and the statute "does not require that the owner exercise supervision or control over the worksite before liability attaches." *Gordon v. E. Ry. Supply, Inc.*, 82 N.Y.2d 555, 560 (1993); *Blake v. Neighborhood Hous. Servs. of New York City, Inc.*, 1 N.Y.3d 280, 287 (2003). Contributory negligence cannot defeat a plaintiff's claim either. *Blake*, 1 N.Y.3d at 287. Nonetheless, "strict" in the § 240 context has different meaning than in strict

products liability, and it "is not the law" that "a fall from a scaffold or ladder, in and of itself, results in an award of damage to the injured party." *See Blake*, 1. N.Y. 3d at 288 (explaining confusion resulting from varying meanings of "strict" liability).

Indeed, "[n]ot every worker who falls at a construction site, and not any object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240(1)." *Id.* (citing *Narducci v. Manhasset Bay Assoc.*, 96 N.Y.2d 259, 267 (2001)). "The core objective of the statute in requiring protective devices for those working at heights is to allow them to complete their work safely and prevent them from falling." *Nieves v. Five Boro Air Conditioning & Refrigeration Corp.*, 93 N.Y.2d 914, 916 (1999). "Where an injury results from a separate hazard wholly unrelated to the risk which brought about the need for the safety device in the first instance, no § 240(1) liability exists." *Id.* Accordingly, a worker may only obtain relief by proving 1) a statutory violation, such as failure to provide the safety devices, and 2) proximate causation. *Blake*, 1 N.Y.3d at 287, 289.

Plaintiff argues that Amtrak, as owner of the project, should be held liable because he "stepped on a defective scaffold which did not afford proper protection." Pl.'s Memo. at 5. Amtrak argues that it is not liable because Plaintiff was not exposed to the "special hazard" of an elevation or gravity-related risk. Amtrak Memo. at 10. According to Amtrak, the situation is "analogous to [P]laintiff falling into a hole located at ground level" because Plaintiff fell into a hole, but did not fall to the floor below. *Id.* at 11. Amtrak also argues that proximate causation is absent because "the safety device that was provided—a scaffold—did precisely what it was intended to do: prevent Plaintiff from falling to the ground below." *Id.* at 11-12.

AECOM also argues that it is not liable under § 240. Like Amtrak, AECOM argues that Plaintiff's injuries were not the result of an elevation-related risk. *Id.* at 13-16. Further,

AECOM claims that it is not a proper defendant because it did not have the ability to control the activity that brought about the accident, and thus it was not the statutory agent of the owner or general contractor. AECOM Memo. at 11–13 ("AECOM did not have the authority to supervise or control the Plaintiff or to direct the construction procedures or safety measures employed by SKANSKA.").

The Court agrees with Defendants that Plaintiff did not suffer injury caused by an "elevation-related hazard." Admittedly, the caselaw addressing these situations is slightly inconsistent. *See Carpio v. Tishman Const. Corp. of N.Y.*, 240 A.D. 2d 234, 236 (1st Dep't 1997) (granting partial summary judgment for plaintiff who fell into hole with three foot elevation differential). However, the Court follows the majority of recent decisions by the Second Department finding that a worker's fall through a relatively small hole that happens to be at an elevation is "the type of ordinary and usual peril a worker is commonly exposed to at a construction site" and does not fall within § 240(1)'s ambit. *See Alvia v. Teman Elec. Contracting, Inc.*, 287 A.D.2d 421, 422 (2d Dep't 2001) (upholding dismissal of § 240(1) claim because 12" by 16" hole in the floor was not an elevation-related hazard); *Rice v. Bd. of Ed. of City of N.Y.*, 302 A.D.2d 578, 580 (2d Dep't 2003) (hole in platform of truck that was not large enough for the plaintiff to fall through did not present an elevated-related hazard); *see also Dwyer v. Goldman Sachs Headquarters LLC*, 819 F. Supp. 2d 320, 326–27 (S.D.N.Y. 2011) (Stein, J.) (granting summary judgment for defendants because worker's fall from a ladder into an eighteen-inch-deep hole on elevated floor was not the result of an elevation-related risk).

This finding is bolstered by the fact that Plaintiff's fall resulted from a "separate hazard wholly unrelated to the danger" that required the protective equipment. *Nieves*, 93 N.Y.2d at 916. As the Court of Appeals has held, the "contemplative hazards [of Section 240(1)] are those

related to the effects of gravity where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or lead being hoisted or secured." *Rocovich v. Consol. Edison Co.*, 78 N.Y.2d 509, 514 (1991) (finding that fall into 12-inch trough on roof was not covered by the statute); *see also Piccuillo v. Bank of N.Y. Co., Inc.*, 277 A.D.2d 93, 94 (1st Dep't 2000) ("Plaintiff's trip and fall was not caused by defendants-respondents' failure to provide or erect necessary safety devices in response to 'elevation-related hazards,' and, accordingly, the protections of Labor Law 240(1) do not apply[.]"). Here, the danger arose from the relatively small hole in the platform, and not from the height differential between the bottom and upper platform. Indeed, Section 240(1) lists as protective equipment "scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, [and] ropes," and it is hard to envision those types of items protecting Plaintiff from his fall through a 14" to 16" hole. Accordingly, Plaintiff cannot obtain relief under N.Y. Labor Law § 240(1), and his motion as to this claim is denied. Defendants' Motions for Summary Judgment as to the § 240(1) claim are granted.[7]

### B. New York State Labor Law § 241

Amtrak and AECOM move for summary judgment on Plaintiff's New York State Labor Law § 241(6) claim.[8] To mount a successful claim under the statute, a plaintiff must claim a concrete violation of New York's Industrial Code. *See Owen v. Commercial Sites, Inc.*, 284 A.D.2d 315, 315 (2d Dep't 2001) ("[T]he plaintiff's failure to identify a violation of any specific

---

[7] Because there was no elevation-related risk, AECOM's argument about lacking the ability to control the activity that brought about the accident need not be addressed.

[8] Plaintiff initially moved for summary judgment on its § 241(6) claim. *See* Pl.'s Memo. at 8, However, Plaintiff subsequently withdrew its request for summary judgment on this claim as to both Defendants. *See* Dkt. 55 (Pl.'s Opp. to Amtrak's Mot. for Summary Judgment ("Pl.'s Amtrak Opp."), at 16.

provision of the State Industrial Code precludes liability under Labor Law § 241(6)[.]"); *see also Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 502 (1993) ("[A]llegations such as plaintiff's, which rely on claimed failures to measure up to such general regulatory criteria as 'adequate,' 'effective' and 'proper,' are not sufficient to give rise to a triable claim for damages under Labor Law § 241 (6)."). Plaintiff argues that Amtrak violated 12 N.Y.C.R.R. 23-1.7(b), which relates to hazardous openings and N.Y.C.R.R. 23-5.1(e)(1), which relates to scaffold planking. Pl.'s Memo. at 7–9.

> 12 N.Y.C.R.R. 23-1.7(b) provides, in relevant part, that:
>
> (i) Every hazardous opening into which a person may step or fall shall be guarded by a substantial cover fastened in place or by a safety railing constructed and installed in compliance with this Part (rule).
> (ii) Where free access into such an opening is required by work in progress, a barrier or safety railing constructed and installed in compliance with this Part (rule) shall guard such opening and the means of free access to the opening shall be a substantial gate. Such gate shall swing in a direction away from the opening and shall be kept latched except for entry and exit.
> (iii) Where employees are required to work close to the edge of such an opening, such employees shall be protected as follows:
> > (*a*) Two-inch planking, full size, or material of equivalent strength installed not more than one floor or 15 feet, whichever is less, beneath the opening; or
> > (*b*) An approved life net installed not more than five feet beneath the opening; or
> > (*c*) An approved safety belt with attached lifeline which is properly secured to a substantial fixed anchorage.

Amtrak argues that this provision does not apply because the "hazardous opening" in this case was not large enough for a person to fit through it. *See* Amtrak Memo. at 14. AECOM argues that Plaintiff did not specify the particular regulatory provision that applies to his incident. *See* AECOM Memo. at 18 ("[G]eneric reference to the regulatory commands and standards set forth in 12 NYCRR 23 is insufficient to give rise to a triable claim for damages under Section 241(6)

as the Court does not have a specific provision in the State Industrial Code by which to measure the defendants' conduct.").

Amtrak is correct that "an opening must be of significant depth and size to be considered a hazardous opening" under § 23-1.7(b)(1)(i). *See Dwyer*, 819 F. Supp. 2d at 327 (collecting cases and finding that two feet wide and eighteen inches deep was too small to fall under the statute) (citing *Barillaro v. Beechwood RB Shorehaven, LLC*, 69 A.D. 3d 543, 544 (2d Dep't 2010) (eighteen to twenty-four inches deep trench is insufficient)); *see Alvia*, 287 A.D.2d at 423 ("It is apparent that these measures [under § 23-1.7] are intended to protect workers from falling through an opening to the floor below and are inapplicable where the hole is too small for a worker to fall through.").[9] Here, it is undisputed that the hole into which Plaintiff partially fell was only 14" to 16" in size. Because this was not large enough to implicate § 23-1.7(b)(1)(i), Plaintiff's claim as to that provision cannot be sustained. *See Rice*, 302 A.D.2d at 421 (§ 241(6) claim premised on violation of N.Y.C.R.R. 23-1.7(b) should not have gone to the jury because the one foot by one foot hole "was not large enough for the plaintiff to completely fall through").

Plaintiff also argues that summary judgment is warranted under 12 N.Y.C.R.R. 23-5.1(e)(1), which provides that:

> Except on needle beam and pole scaffolds, scaffold planks shall extend not less than six inches beyond any support nor more than 18 inches beyond any end

---

[9] Plaintiff attempts to cite cases going the other way. *See* Pl.'s Amtrak Opp. at 17. Nonetheless, none of those cases compels a different conclusion in this action. In *Pilato v. Nigel Enters., Inc.*, the Fourth Department denied summary judgment where the ceiling joists on which plaintiff was working were 14 to 16 inches apart and eight feet above the floor. 48 A.D.3d 1133, 1134 (4th Dep't 2008). However, in that case, the court was unable to determine whether plaintiff had fallen between the ceiling joists or whether he had fallen onto a joist and then lowered himself to the floor. *Id.* Thus, it was at least feasible that the plaintiff could have fallen to the ground through the gaps. *Id.* In *Coleman v. Crumb Rubbers Mfgs.*, 92 A.D.3d 128, 130 (3d Dep't 2012), there was no measurement of the hole's depth. *Keegan v. Swissotel N.Y.*, 262 A.D.2d 111, 113–14 (1st Dep't 1999) did not address the issue of whether the hole was big enough to fall through.

support. Such six inch minimum requirement shall not apply when such planks are securely fastened in place. Scaffold planks shall be laid tight and inclined planking shall be securely fastened in place.

Plaintiff offers only the barest of explanations for why this provision should apply. Plaintiff argues that "[a] hole of the size described by Plaintiff . . . could only exist, it is submitted, if there were missing planks/timbers in the hole/void." Pl.'s Memo. at 8. Yet this case, as described by Plaintiff himself, centers on a machine-made holes. It does not involve missing or loose planks, as covered by 12 N.Y.C.R.R. 23-5.1(e)(1). Plaintiff also does not produce any facts suggesting that the hole could have been prevented had the planks been set closer together. Accordingly, Plaintiff's claim under this provision is dismissed.

Plaintiff cannot sustain either of his two bases for liability under Labor Law § 241(6). Thus, Plaintiff's claims under that statute are dismissed as to both Defendants.

### C. New York State Labor Law § 200

Defendants move for summary judgment on Plaintiff's New York State Labor Law § 200 claim. That provision[10] codifies the common law theory of negligence and "imposes a duty upon an owner or general contractor to provide construction site workers with a safe place of work." *Dos Santos v. Terrace Place Realty, Inc.*, 433 F. Supp. 2d 326, 333 (S.D.N.Y. 2006) (McMahon, J.) (citing *Cun–En Lin v. Holy Family Monuments*, 18 A.D.3d 800, 801 (2d Dep't 2005)). However, "[a]n owner is not liable under § 200 unless it had actual or constructive notice of the condition complained of . . . and exercised supervision or control over the work performed by the plaintiff[.]" *Wilson v. City of New York*, 89 F.3d 32, 38 (2d Cir. 1996) (internal citations

---

[10] In relevant part, the statute reads: "All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons." § 200(1).

omitted); *Reis v. Vannatta Realty*, 515 F. Supp. 2d 441, 445 (S.D.N.Y. 2007) (Robinson, J.) ("Section 200 requires that the owner or general contractor have the authority to control the activity bringing about the injury.") (internal quotations and citations omitted).

However, an exception to this rule exists. "[W]here a plaintiff's claims are based . . . on a dangerous condition on the work site, the question is not whether the defendant exercised supervisory control over the manner of performance of the injury-producing work, but rather whether it had notice of the condition." *See Wallace v. Nat'l R.R. Passenger Corp.*, 11-CV-5419, -- F. Supp. 2d --, 2014 WL 1088906, at *9 (S.D.N.Y. Mar. 18, 2014) (Nathan, J.) (internal citations and quotations omitted). Thus, when an injury results from a premises condition, property owners may be liable "if the owner either created the dangerous condition that caused the accident or had actual or constructive notice of the dangerous condition that caused the accident." *Baklous v. Amtrak*, 933 F. Supp. 2d 444, 454–55 (E.D.N.Y. 2013) (Kuntz, J.) (internal citations omitted). "[A] general contractor may be liable in common law negligence and under Labor Law § 200 if it has control over the work site and actual or constructive notice of the dangerous condition[.]" *Mendez v. Jackson Dev. Grp., Ltd.*, 99 A.D.3d 677, 679–80 (2d Dep't 2012) (quoting *Keating v. Nanuet Bd. of Ed.*, 40 A.D.3d 706, 708 (2d Dep't 2007)).

Amtrak and AECOM argue that they did not hold the requisite supervision or control over the manner of Plaintiff's work. *See* Amtrak Memo. at 4–5, AECOM Memo. at 19–22. Because this is a premises condition case, Amtrak's defense must be analyzed under the creation or notice test. Plaintiff's primary contention on this point is that the hole in question "had actually been in[ ] existence since March 23, 2010, the day before plaintiff[']s accident. Pl.'s Amtrak Opp. at 19. As evidence, Plaintiff points to a photograph taken on March 23, 2010, that allegedly shows the hole partially covered. *Id.*; *see* Dkt. 76-5 ("Ex. M"). Amtrak argues that

Plaintiff previously stated that he had never seen any photographs of the location of the accident, and Plaintiff did not state whether the condition depicted in the photograph is substantially the same as it was on the date of the accident. Dkt. 62 (Amtrak's Reply Br. to Pl.'s Mot. for Summary Judgment ("Amtrak Reply")), at 8. Amtrak also argues that because the defect was "open and obvious," Amtrak had no duty to remedy the dangerous condition. *Id.* at 8–9.

AECOM must satisfy a slightly different test—that it had not only created the dangerous condition or had notice of it, but also had "control" over it. *See Mendez*, 99 A.D. 3d at 679–80. AECOM argues that it did not have the requisite authority to correct an unsafe condition, and that it lacked actual or constructive knowledge. *See* Dkt. 52 (AECOM's Reply Br. to Pl.'s Mot. for Summary Judgment ("AECOM Reply")), at 8-10. AECOM contends that it was not responsible for examining and inspecting the scaffold; that there is no evidence suggesting that that AECOM received complaints about the scaffold's condition; and the photograph was not necessarily taken to depict the allegedly hazardous condition. *Id.* at 9–10.

The Court finds that the photograph adequately creates a material disputed fact as to the Defendants' constructive notice of the hole. The photograph is sufficiently authenticated by Plaintiff and a fellow worker. *See* Dkt. 74 (Aff. of Omar Villalba ("Villalba Aff."), at ¶¶ 4–6; Dkt. 74-1 (Aff. of William O'Frias ("O'Frias Aff.")), at ¶ 3 ("The photograph also fairly and accurately depicts the hole which [Plaintiff] told me (and showed me) he had fallen into"); *see also* Fed. R. Evid. 901.[11] Further, the picture itself contains no indicia of inauthenticity and is in

---

[11] The Court finds it notable that Amtrak contests the Plaintiff's ability to authenticate the picture, but never directly questions the authenticity of the photograph itself. *See Bieda v. JCPenney Commc'ns, Inc.*, 92-CV-5910, 1995 WL 437689, at *1 n.2 (S.D.N.Y. July 25, 1995) (Keenan, J.) (considering challenged exhibits despite Defendants' attempt to argue that Plaintiff could not authenticate them and noting that Defendants "d[id] not challenge the authenticity of the documents themselves"); *accord Commercial Data Servers, Inc. v. Int'l Bus. Machines Corp.*, 262 F. Supp. 2d 50, 58–59 (S.D.N.Y. 2003) (McMahon, J.).

the body of an email dated "3.23.10," which suggests that it was taken the day before Plaintiff's accident. *See* Ex. M. Defendants do not meaningfully contest that the photograph depicts the worksite in which Plaintiff fell, and that it was taken the day before Plaintiff's accident. The photograph thus creates a material issue of fact as to constructive notice of a dangerous condition, because it suggests that the Defendants knew or should have known that a hole existed. *Finger v. Cortese*, 28 A.D.3d 1089, 1091 (4th Dep't 2006) (constructive notice established if it is visible and apparent or if it had existed for a sufficient length of time before the accident to permit defendants or their employees to discover and remedy it). Because constructive notice of a dangerous condition is sufficient to hold Amtrak liable, Amtrak's Motion for Summary Judgment as to § 200 is denied.[12]

AECOM's Motion is also denied. As in *Mott v. Tromel Constr. Corp*, 79 A.D.3d 829, 831 (2d Dep't 2010), the Defendant's presence on the work site, safety inspections and patrols, and authority to stop the work of anyone on site if necessary "raises triable issues of fact as to whether [it] exercised control over the work site and had actual or constructive notice of the alleged dangerous condition." *Accord Steiger v. LPCiminelli, Inc.*, 104 A.D.3d 1246, 1248 (4th Dep't 2013).

Accordingly, Plaintiff may proceed on his § 200 claim against both Defendants.

---

[12] Amtrak's "open and obvious" argument does not preclude liability here. As the Second Department stated in *Cupo v. Karfunkel*, 1 A.D.3d 48, 49 (2d Dep't 2003), "the open and obvious nature of an allegedly dangerous condition is relevant to the issue of the comparative fault of the plaintiff and does not preclude a finding of liability against the landowner." The only exception, not applicable here, is when the "condition complained of by the plaintiff was both open and obvious *and, as a matter of law, was not inherently dangerous.*" *Id.* at 52 (emphasis in original).

## CONCLUSION

For the reasons stated above, Defendants' motions for summary judgment as to Plaintiffs' Labor Law § 240 and § 241 claims are GRANTED, and Plaintiff's motion as to those claims is DENIED. However, Defendants' motions for summary judgment as to § 200 are DENIED. The parties are to proceed with any remaining discovery in accordance with this Opinion. Jury selection for the three-day trial in this action will begin at 9:30 a.m. on Wednesday, April 8, 2015.

**SO ORDERED**

Dated: September 29, 2014
      Brooklyn, New York

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge